———O———

### 5214.

### (Court of Appeal, Parish of Orleans).

## CENTRAL GLASS COMPANY vs. GERMAN -AMERI- CAN INSURANCE COMPANY.

1. All that the law requires is substantial compliance with the "iron safe clause" of an insurance policy, and the condition is performed when the books present such a record of the business transacted as will furnish sufficient data from which the amount, character and value of the stock on hand at the time of the fire can be reasonably ascertained.

2. A forfeiture of a policy of insurance for violation of the "iron safe clause" should not be declared simply because a single item of the inventory, forming a small proportion of the total amount thereof, was not itemized in strict compliance with the contract.

3. In order that a policy may be forfeited for false swearing it must be proved, not only that the statements were untrue, but that the false swearing was intentionally committed; and fraud will not be presumed from acts which may be accounted for on the basis of honesty and good faith.

Appeal from the Civil District Court, Division "B."

Lazarus, Michel & Lazarus, for plaintiff and appellee.

Caffery, Quintero, Gidiere & Brumby, for defendant and appellant.

GODCHAU, J.—Plaintiff's place of business where it manufactured mirrors, art glass, etc., and dealt in the sale of these products, as well as plate glass and ordinary glass, was destroyed by fire on August 30, 1908, and this suit is one wherein it seeks to recover for the total loss of its stock of goods insured by policy in defendant company, which, together with other companies, had issued policies upon this stock, aggregating $33,200.

## I

The first defense is that the books, as kept, did not show the amount of stock that had actually been taken out of the premises for the purpose of executing and completing contracts then unfinished in various parts of the city, as a result of which these goods appeared from the books to be in the premises at the time of the fire and consequently covered by the policy, when in fact such was not the case. The defendant pleads this as a bar to recovery on the ground that it is a breach of the "iron safe clause" which provides as follows:

> "The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit."

The evidence does not sustain the contention. It appears that the company preserved what is known as an "estimate book," wherein was recorded an estimate of the labor and material that would be required for the execution of its contracts. During the period the contract was being executed a record of the material sent

out for that purpose was kept upon what is termed and described in the evidence as "glazier's tickets," and at the same time an account of the labor expended on the various jobs was regularly entered in the books. The merchandise account was not credited at once with the amount called for by these glazier's tickets for the reason that it was impossible to then fix with any degree of accuracy the quantity of material that would be actually used in the fulfillment of the contracts; and it was not until the contract was completed that the merchandise account received any credit whatever, although the fact that the merchandise was not upon the premises, as well as the quantity and character of such merchandise, was distinctly shown by means of the glazier's tickets.

All that the law requires is a substantial compliance with the terms of the policy, and the court is of the opinion that the foregoing statement of facts constitute such a compliance; for it evidences the keeping and presentation of a complete record of the business transacted and furnishes sufficient data from which the amount and value of the stock on hand at the time of the fire can be reasonably estimated.

## II

A second defense is that the inventory of December 31, 1907, the last inventory taken, contains an entry, not itemized and in bulk, of "salvage glass," estimated at $2,500. It is claimed that this amount of salvage glass did not exist at the time and that conseqently plaintiff was guilty of such false swearing as would bar recovery; and furthermore that recovery is also barred because the entry of this salvage, consisting of glass of various sizes and quality, in bulk and as one item, is a violation of the iron safe clause which requires the taking of "a complete itemized inventory of stock on hand."

That there was on hand on December 31, 1907, salvage glass to the value of $2,500 is established by the testimony, uncontradicted and unimpeached, of numerous witnesses who had accurate means of knowledge at their disposal and who testified that the value and amount of this material actually existing at that time were largely in excess of what is claimed. The defense of false swearing as to this item can only be maintained upon the theory that each of these witnesses deliberately perjured himself, and this court is unable to find the slightest indication that such is the case.

The salvage was composed of fragments of glass of irregular size and shape, incapable of measurement, saved from various jobs or purchased from junk dealers, bulked because it was physically impossible to separate, measure, value or itemize it, and consisting entirely of remnants that could no longer be classed as art glass, nor plain glass, nor kept as standard sizes of such and the eventual use of which for installment or manufactured as glass of any particular character, depended wholly upon the accidental requirements of an occasion which would permit its utilization. Every other portion of the inventory, which aggregated about $22,000, is in strict accord with the stringent provisions of the policy.

In a case where the total inventory was $5,000 and two items thereof appeared respectively as "harness, robes, collars and horse blankets, $1,250," and "Sloan's medicine, oil, whips, summer robes, lots of different kinds of medicines and second-hand harness, $775," it has been recently held:

"And if this had been the general character of the inventory relied on, or the greater portion and controlling feature of it, the objection would have to be sustained. But, as heretofore stated, much the larger proportion of the amount, and the articles of chief

value and which fixed the general character of the business, were set out ,itemized and valued. In a case of this character we are of the opinion that such an inventory should not be entirely set aside and a forfeiture declared, because a single item or inventory of the kind referred to was not in strict compliance with the contract.''

**Arnold vs. Indemnity Insurance Company, 67 Southwestern (North Carolina) 574.**

Upon the whole the court is satified that this defense is without merit.

## III

The final defense, and the one upon which the greatest stress has been laid, is that plaintiff is barred from recovery because it has fraudulently inflated the stock on hand at the time of the fire by falsely swearing it had realized a profit of 33 1/3 per cent. on its sales from Jan. 1, 1908, to August 30, 1908, that is from the date of the last inventory to the date of the fire. After innumerable witnesses had been heard and a mass of testimony had been elicited in an effort to fix the amount of this profit, the court concluded that its ascertainment required an examination of such a number of books, accounts and transactions and the making of such intricate analysis and calculations based thereon, that it was necessary to appoint expert accountants to assist the court. In the meanwhile, during the hearing, the defendant consistently contended that it was a matter of impossibility to ascertain the profits of that period from the record of the transactions that had taken place since January 1, 1909, or from any reliable data that could otherwise or elsewhere be secured; and the defendant had insisted and presently continues to insist that the average percentage of profit earned in the past years, prior to the last inven-

tory, is invariably necessarily adopted in all adjustments of this character as exhibiting the only true standard by which the profits between the last inventory and the fire may be measured. The court adopted the contrary view and the appointment of experts was for the express purpose of attempting, at least, to fix the amount of profits from the books, records and other data covering the transactions that had actually taken place during that period. - The court stated that it would first make an effort to definitely ascertain the profits in this manner before having recourse to the adoption of indirect and inferential evidence thereof, such as data as to the average profits earned during preceding years.

Of the three experts appointed by the court the one nominated or suggested by the defendant was subsequently discharged and the defendant now particularly complains of this action on the part of the court, but the view of the case that this court has adopted, as hereinafter stated, renders wholly unnecessary any inquiry into this subject. Suffice it to say at the time of the discharge of the defendant's expert, the greater portion of the work assigned to the accountants had been completed, and it embraced a thorough and minute examination and analysis of every business transaction during the year 1908, and of every record and entry and all data with regard thereto. The remaining experts finally filed their report with the court, and this disclosed a profit on the sales from January 1, 1908, to August 30, 1908, considerably in excess of that claimed by the plaintiff in its proof of loss.

At this point it is proper to consider whether or not the defendant has established such a case of false swearing with respect to this item of profit as to justify the conclusion that plaintiff has forfeited for fraud, its right of recovery. Upon this subject the only evidence that defendant has sought to elicit in its effort to prove that the

profits for 1908 were less than that claimed by the plaintiff, is to the effect that the profits during the years preceding 1908, particularly the years 1906 and 1907, were far below the profits claimed for 1908. As against this proof, which is at most merely inferential and might indicate mistake and not necessarily fraud, the plaintiff's claim of a profit of 33 1/3 per cent. is affirmatively supported by the two experts, one, it is true, nominated by the plaintiff, but the other impartially designated and appointed by the court. It is likewise supported by the proof that at the time of the fire plaintiff had on hand contracts in the course of execution aggregating $40.000, which it is shown by actual figures would have netted a profit in excess of that fixed by the experts. Defendant's contention itself, that the profits of 1908 cannot be accurately ascertained from the transactions of that year, show not only that the defendant was unable to prove the falsity of plaintiff's claim as to these profits, but necessarily leads to the conclusion that, even if plaintiff's claim of profit is untrue the mistake or error may have been caused solely by the difficulty of ascertaining these profits with accuracy and may not have been accompanied by any intent to defraud. It is true that the report of the experts is largely based upon analysis made by Mr. Lips, an officer of the plaintiff corporation, of some 2,200 sales made during that year; but as each transaction reported upon by Mr. Lips was independently examined and checked by the experts against the books, the inventory and original invoices and other available data, and as defendant has not been able to disclose a single error in Lips' calculation, it is difficult to conceive what cause of complaint the defendant can have upon this score.

The defendant does not itself undertake to fix and ascertain the profits of 1908 from the transactions of that year, but takes the position that because in preceding years a certain average of profit was made; it follows

that the claim to a greater profit in 1908 is not only false but necessarily fraudulent. In view of the facts recited above, this court is unable to subscribe to that view and is equally unable to find the slightest indication of any fraudulent intent on the part of the plaintiff and its officers.

"It must be made evident, however, that the alleged false swearing was intentionally committed. The burden of proving the truth of an allegation of fraud rests upon the defendant. Fraud is never to be assumed from acts which may be accounted for on the basis of honesty and good faith."

Baillie vs. Insurance Company, 49 An. 660.

"The false swearing that works a forfeiture of all claims under a policy of insurance is not the discrepancy, even if it be material between the statements of the insurer under oath in its proof of loss and those made at the trial; nor does an overstatement of the value of the property work such forfeiture, for a great difference of opinion upon values may well co-exist with perfect honesty of all persons differing. The assured may have sworn to what he believes to be true, but which nevertheless is false, and his policy would not thereby be forfeited. To work such forfeiture, the assured must knowingly and intentionally, and, therefore, fraudulently have sworn, with the intent to deceive the insurer and get from him a value falsely put upon the property."

Erman vs. Insurance Company, 35 An. 1095. See, also, Rafel vs. Insurance Company, 7 An. 244, and Daul vs. Insurance Company, 35 An. 98.

The question of fraud and false swearing being thus eliminated, the case presented resolves itself into one of ordinary adjustment between the parties, and that is the

matter that will now be considered.

## IV

To determine the loss suffered by plaintiff the statement of the loss by defendant's accountant, which comes before us attached to a bill of exceptions, will be used as the basis of calculation, and only such corrections will be made therein as the evidence requires should be made, in order that a true settlement may be had between the parties.

> "Be it known that, etc. * * * a witness for defendant company being on the stand, and having testified that he was a certified public accountant; that he had examined the books and accounts of the Central Glass Company, Limited, plaintiff herein, and that he prepared a true and correct report thereon, and the said witness having declared that the document hereto annexed as part hereof, was said report, counsel for defendant offered said report in evidence."

That portion of the report which treats of the proof of loss is as follows.

Central Glass Company.—Statement of loss by Fire, August 30, 1908, as taken from their books.

| | | |
|---|---:|---:|
| Inventory, January 1, 1908....... | | $22,017.20 |
| Less Salvage Glass.............. | 2,500.00 | |
| Plate Rack ..................... | 100.00 | |
| Standing Machine ...........:... | 16.50 | |
| | | 2,616.50 |
| Net amount of inventory as corrected ............... ........ | | 19,400.70 |
| Purchase of Material: | | |
| Glass department ...............19,291.02 | | |
| Woodwork ..................... | 500.79 | |
| | | 19,971.81 |

**Labor and Pay-rolls:**

| | | |
|---|---|---|
| Woodworks ........................ 2,244.07 | | |
| Glass department .. . 14,130.63 | | |
| Less office ............. 2,073.50 | | |
| 12,057.13 | | |
| | | 14,301.20 |

**Fuel and Repairs:**

| | |
|---|---|
| Glass department ................ | 505.38 |
| Woodworks ..................... | 115.11 |
| | 620.49 |
| Freight and drayage ............. | 2,396.68 |

**Total Charges to Material from**

| | |
|---|---|
| January 1st to Aug. 31, 1908...... | 56,510.88 |
| Gross sales for period.......37,906.41 | |
| Less profit at 16.151% on cost 5.271.04 | |
| | |
| Making net cost of sales............32,635.37 | |
| Amount of material on uncompleted jobs out of store at time of fire ...................... | 759.03 |
| | |
| Total deductions .............. | 33,394.40 |
| | |
| Net value of stock in store at time of fire ................. | 23,116.48 |
| Add goods held in trust......... | 615.61 |
| | |
| Making actual loss to Central Glass Co., by fire August 30, 1908.. | 23,732.49 |

It will be noted in the foregoing that in calculating the profits on sales a percentage of 16.161% is adopted; that is the average profit for the years 1906 and 1907. The average profit for the three years 1905, 1906 and 1907 is 20.88% and no good reason can be advanced why an

average profit of the three years should not be a proper basis of calculation, even on the defendant's own hypothesis. In this item of the report there is a clerical error in the calculation 16.151% of the gross sales of $37,906.41, the report using the figures $5271.04, when they should be $6122.25, or a difference of $851.21, which should be added to the final figure of the report, namely, $23,732.49, thereby increasing same to the sum of $24,- 583.71. It will be further noted that the report excludes from the inventory the item $2500, for salvage glass, and the allowance of this item, for the reason heretofore stated, requires a further augmentation of the report.

The evidence shows the following items also should be added.

An item of $708.66 imported merchandise which was inadvertently omitted from the inventory, though actually on hand.

An item of $1346.50, erroneously omitted from the inventory though actually on hand, and consisting of mirrors, reels, etc.

An item of glass cut on contract at the time of the inventory but erroneously omitted therefrom and which together with the merchandise and manufacturing cost thereof amounts to $1599.69.

An item of glass out on contract at the time of the tually purchased during the year 1908 and not taken into consideration in the foregoing report.

The amount of $615.61 shown on said report for goods held in trust, should be changed, according to the evidence elicited, to $729.14, thus requiring an addition of $113.53.

The item of profits on sales should likewise be changed, in as much as the percentage of profits for three years, namely, $20.88% will be adopted in preference to the profit percentage of 16.151%. The difference in the pro-

fits on sales will be $1792.60, and this, likewise, should be added to the final figures of that report.

There should be likewise added item of $550.00, which has been designated in the testimony as "art glass samples and patterns" since it is shown that these form part of the company's stock of merchandise and were at times sold as such.

Tabulating these items the following result is obtained:

| | |
|---|---:|
| Actual loss shown in said report | $23,732.49 |
| Add, in order to correct clerical error of calculation of profits | 851.21 |
| Add, item of salvage glass, erroneously deducted | 2,500.00 |
| Add, imported merchandise inadvertently omitted from the inventory | 708.66 |
| Add, mirrors, reel, etc., inadvertently omitted from inventory | 1,346.50 |
| Add, glass out on contract at the time of inventory | 1,599.96 |
| Add, salvage glass purchased in 1908 | 375.01 |
| Add, in order to correct item of goods held in trust | 113.53 |
| Add difference produced by calculating profits on the basis of 20.88% | 1,792.60 |
| Add item art ware, samples and patterns | 550.00 |
| Total loss | $33,569.96 |

Should the profits on sales be calculated upon the basis urged by plaintiff or that ascertained by the experts from their investigation of the business done in 1908, the total loss would be increased by about $5,000.00 and no substantial cause has been shown for not adopting their figures.

It will thus be seen that even upon the defendant's hypothesis that the profits should be calculated on the

basis of the average earnings of preceding years, the loss sustained by the plaintiff is in excess of its insurance, $33,200.

The judgment of the court below is in accord with our conclusions upon the question of fraud as well as upon the question of loss sustained, and its judgment is unquestionably correct. It is, accordingly, ordered that the judgment appealed from be affirmed.

St. Paul, Judge, takes no part.

May 1, 1911.

Rehearing refused, June 7, 1911.

Writ granted by Supreme Court, July 6, 1911.